

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | | |
|---|---|---|
| JEANA CORK, | ) | No. ED CV 09-2288-PLA |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

I.

**PROCEEDINGS**

Plaintiff filed this action on December 17, 2009, seeking review of the Commissioner's denial of her applications for Disability Insurance Benefits and Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on January 5, 2010, and January 19, 2010. Pursuant to the Court's order, the parties filed a Joint Stipulation on August 11, 2010, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on January 1, 1966.  [Administrative Record ("AR") at 65, 67, 120.]  She has some college education [AR at 28-29], and has past relevant work experience as a mental health nurse and a provider of in-home support services.  [AR at 22-25.]

On July 10, 2006, plaintiff protectively filed her applications, alleging that she has been unable to work since May 15, 2005, due to, among other things, "disorders of [the] back (discogenic & degenerative)."  [See AR at 64, 65, 67, 120, 127.]  After her applications were denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  [AR at 69-74, 78-82, 86.]  A hearing was held on November 19, 2008, at which time plaintiff appeared with counsel and testified on her own behalf.  [See AR at 19-63.]  Plaintiff's husband and a vocational expert also testified.  [AR at 54-61.]  On April 8, 2009, the ALJ issued an unfavorable decision.  [See AR at 6-18.]  When the Appeals Council denied plaintiff's request for review of the hearing decision on October 6, 2009, the ALJ's decision became the final decision of the Commissioner.  [AR at 1-3.]  This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257.  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well

1   as supporting evidence.  Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th

2   Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court

3   must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala,

4   53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

5

6                                          IV.

7                          **EVALUATION OF DISABILITY**

8           Persons are "disabled" for purposes of receiving Social Security benefits if they are unable

9   to engage in any substantial gainful activity owing to a physical or mental impairment that is

10  expected to result in death or which has lasted or is expected to last for a continuous period of at

11  least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

12

13  **A.      THE FIVE-STEP EVALUATION PROCESS**

14          The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing

15  whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821,

16  828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must

17  determine whether the claimant is currently engaged in substantial gainful activity; if so, the

18  claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in

19  substantial gainful activity, the second step requires the Commissioner to determine whether the

20  claimant has a "severe" impairment or combination of impairments significantly limiting her ability

21  to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.

22  If the claimant has a "severe" impairment or combination of impairments, the third step requires

23  the Commissioner to determine whether the impairment or combination of impairments meets or

24  equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404,

25  Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.

26  If the claimant's impairment or combination of impairments does not meet or equal an impairment

27  in the Listing, the fourth step requires the Commissioner to determine whether the claimant has

28

                                            3

1  sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled
2  and the claim is denied.  Id.  The claimant has the burden of proving that she is unable to perform
3  past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie
4  case of disability is established.  The Commissioner then bears the burden of establishing that the
5  claimant is not disabled, because she can perform other substantial gainful work available in the
6  national economy.   The determination of this issue comprises the fifth and final step in the
7  sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d
8  at 1257.

9

10  **B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

11         In this case, at step one, the ALJ concluded that plaintiff has not engaged in any substantial
12  gainful activity since the alleged onset date of disability.[1]  [AR at 11.]  At step two, the ALJ
13  concluded that plaintiff has the severe impairments of "degenerative disc disease of the cervical
14  and lumbar spines."  [AR at 12.]  At step three, the ALJ concluded that plaintiff's impairments do
15  not meet or equal any of the impairments in the Listing.  [AR at 14.] The ALJ further found that
16  plaintiff retained the residual functional capacity ("RFC")[2] to perform the "full range of medium
17  work."[3]  [Id.]  At step four, after determining plaintiff's RFC, the ALJ concluded that plaintiff is
18  capable of performing her past work as a "home health aide and mental health nurse's aide." [AR
19  at 18.]  Accordingly, the ALJ found that plaintiff is not disabled.  [Id.]

20  _____

21     [1]    The ALJ also found that although plaintiff had worked after the alleged disability onset date,
22  based on the overall earnings records, that work did not rise to a level of substantial gainful activity
    from the alleged onset date through the date of the decision.  [AR at 11.] However, the ALJ concluded
23  that "[plaintiff's] earnings over this period are evidence of her ability to perform work related tasks
    during the relevant time period."  [AR at 11-12.]
24
       [2]    RFC is what a claimant can still do despite existing exertional and nonexertional limitations.
25  Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).
26
       [3]    Medium work is defined as work involving "lifting no more than 50 pounds at a time with
27  frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. §§ 404.1567(c),
    416.967(c).
28

**V.**

**THE ALJ'S DECISION**

Plaintiff contends that the ALJ failed to properly: (1) reject the opinion of treating physician Dr. James Hwang; (2) develop the record; (3) assess plaintiff's credibility; and (4) consider all significant and probative evidence.  [Joint Stipulation ("JS") at 2.]  As set forth below, the Court respectfully disagrees with plaintiff's position and affirms the ALJ's decision.


**A.    TREATING PHYSICIAN'S OPINION**

Plaintiff contends that the ALJ improperly rejected the findings of her treating physician, Dr. James Hwang.  [See JS at 3-7.]  The ALJ rejected Dr. Hwang's more restrictive RFC of plaintiff "due to inconsistencies with [Dr. Hwang's] own findings, as well as other concurrent treating/examining sources' statements and clinical findings . . . ." [AR at 16-17.]  Instead, the ALJ concurred with the state agency examiners' findings that plaintiff's "exertional and/or non-exertional limitations would limit her to medium level of exertion."[4]  [AR at 17.]  A review of the record reveals that one of the reasons provided by the ALJ to reject Dr. Hwang's opinion -- that it was not supported by his own treatment notes -- is explicit and legitimate and supported by substantial evidence.

When an ALJ evaluates medical opinions, the case law and regulations require the ALJ to distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians);

---

[4]    On September 16, 2006, medical consultant Dr. R. B. Paxton, after reviewing plaintiff's medical records and to "allow for some discomfort," concluded that plaintiff has the capacity for a range of work at the medium exertional level with "occasional posturals." [AR at 150-53.]  On November 2, 2006, medical consultant Dr. T. N. Do affirmed Dr. Paxton's "medium" RFC assessment of plaintiff.  [See AR at 152; see also AR at 250-54.]  Dr. Do reported that plaintiff could occasionally lift and/or carry fifty pounds, could frequently lift/carry twenty-fifty pounds, could stand, walk or sit for about six hours in an eight-hour work day, and had unlimited pushing and pulling abilities.  [AR at 251.]  Additionally, Dr. Do indicated that plaintiff's impairments did not affect her ability to occasionally climb ramps and/or stairs, balance, stoop, kneel, crouch or crawl. [AR at 252.] Furthermore, no manipulative, visual, communicative or environmental limitations were established.  [AR at 252-53.]

5

1  and (3) those who neither examine nor treat the claimant (non-examining physicians).  See 20

2  C.F.R. §§ 404.1502, 404.1527, 416.927; see also Lester, 81 F.3d at 830.  Generally, the opinions

3  of treating physicians are given greater weight than those of other physicians, because treating

4  physicians are employed to cure and therefore have a greater opportunity to know and observe

5  the claimant.  Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007); Smolen v. Chater, 80 F.3d 1273,

6  1285 (9th Cir. 1996).  Despite the presumption of special weight afforded to treating physicians'

7  opinions, an ALJ is not bound to accept the opinion of a treating physician.  However, the ALJ may

8  only give less weight to a treating physician's opinion that conflicts with the medical evidence if the

9  ALJ provides explicit and legitimate reasons for discounting the opinion.  See Lester, 81 F.3d at

10  830-31 (the opinion of a treating doctor, even if contradicted by another doctor, can only be

11  rejected for specific and legitimate reasons that are supported by substantial evidence in the

12  record).

13      The ALJ rejected Dr. Hwang's findings in part because his own treatment notes did not

14  warrant the marked limitations he suggested.  [AR at 16.]  On June 3, 2008, Dr. Hwang completed

15  a "Medical Opinion Re Ability To Do Work-Related Activities (Physical)" worksheet indicating that

16  plaintiff's maximum ability to lift and carry on an occasional and frequent basis was less than ten

17  pounds; plaintiff could sit, stand and walk for less than two hours in an eight-hour workday; and

18  plaintiff could only occasionally twist, stoop, crouch, and climb stairs and ladders.  [AR at 265-67.]

19  He also suggested that plaintiff avoid concentrated exposure to elements such as extreme cold,

20  extreme heat, wetness, humidity, noise, fumes and hazards.[5]  [AR at 267.]  However, and as the

21  ALJ noted, Dr. Hwang's treatment notes from February 2007 to June 2008 consistently indicated

22  that plaintiff was in "no acute distress" and/or had "no guarding" behavior on many occasions.  [AR

23  at 16; see also AR at 300, 307, 335, 358, 363, 366, 371, 403, 406.]  In fact, the record reveals that

24  on the day Dr. Hwang issued his RFC opinion, plaintiff appeared in "no acute distress."  [AR at

25

26      [5]  Although Dr. Hwang does not expressly suggest an exertional level for plaintiff, it appears
he has assessed plaintiff at the "sedentary" level because, among other things, he opines that her
27  maximum ability to lift and carry is less than ten pounds.  See 20 C.F.R. §§ 404.1567(a),
416.967(a) (sedentary work involves lifting no more than 10 pounds at a time and occasionally
28  carrying articles like docket files, ledgers, and small tools).

335.]  There is no indication in Dr. Hwang's notes from that visit that plaintiff was in any kind of pain. [See AR at 334-35.]  The treatment notes also indicate that the reason for plaintiff's visit with Dr. Hwang that day was for a "medical examination for administrative purposes," and for a medication refill, not for treatment of an ailment. [AR at 335.]  Furthermore, as the ALJ also noted, plaintiff was treated on an "as needed basis" for her complaints of neck/back pain, and most of her treatments with Dr. Hwang "were not related to her multi-level degenerative disc disease." [AR at 16; see also AR at 299-302, 354-56, 357-61, 362-64, 365-68, 380-83, 402-04, 405-07.]  An ALJ may properly reject a treating physician's opinion that is inconsistent with his treatment notes.  See C.F.R. §§ 404.1527(d)(4), 416.927(d)(4) (the more consistent an opinion is with the record as a whole, the more weight it will be given); see also Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 603 (9th Cir. 1999) (a medical report's inconsistency with the overall record constitutes a legitimate reason for discounting the opinion); Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992) (inconsistencies in a physician's opinion represent a specific and legitimate reason for rejecting it); Weetman v. Sullivan, 877 F.2d 20, 23 (9th Cir. 1989) (a physician's opinion may be rejected where it is inconsistent with the physician's own treatment notes).  The inconsistency between Dr. Hwang's treatment notes and his opinion regarding plaintiff's limitations was a specific and legitimate reason for rejecting his opinion.  This reason alone suffices to reject Dr. Hwang's opinion.  See  Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (an ALJ need not accept a treating physician's opinions that are conclusory and brief, or unsupported by clinical findings or the physician's own treatment notes).  Remand is not warranted on this basis.

**B.     DUTY TO DEVELOP THE RECORD**

Plaintiff contends that the ALJ failed to properly develop the record, as plaintiff's condition had "worsened greatly" and the ALJ should have "secured updated treatment records and should have arranged for an updated orthopedic consultation." [See JS at 11-12.]  The Court disagrees.

The ALJ has an affirmative "duty to fully and fairly develop the record and to assure that the claimant's interests are considered ... even when the claimant is represented by counsel."

1   *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003) (ellipsis in original) (quoting *Brown v.*

2   *Heckler,* 713 F.2d 441, 443 (9th Cir. 1983)); *see Tonapetyan*, 242 F.3d at 1150.  If evidence from

3   a medical source is inadequate to determine if the claimant is disabled, an ALJ is required to

4   recontact the medical source, including a treating physician, to determine if additional needed

5   information is readily available.  *See* 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1); *see also* Webb

6   v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) ("[t]he ALJ's duty to supplement a claimant's record

7   is triggered by ambiguous evidence [or] the ALJ's own finding that the record is inadequate").  The

8   responsibility to see that this duty is fulfilled belongs entirely to the ALJ; it is not part of the

9   claimant's burden.   *White v. Barnhart,* 287 F.3d 903, 908 (10th Cir. 2001).   The ALJ may

10  "discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting

11  questions to the claimant's physicians, continuing the hearing, or keeping the record open after

12  the hearing to allow supplementation of the record." *Tonapetyan*, 242 F.3d at 1150 (citing *Tidwell*

13  v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998)).

14          Here, the ALJ's duty to further develop the record was not triggered.  It appears plaintiff is

15  asserting that the record is inadequate because her condition had worsened and the ALJ did not

16  obtain updated medical records.  [JS at 12.]  However, the record indicates that plaintiff submitted

17  medical records dated up to and including October 2008, just one month prior to the hearing.  [*See*

18  generally AR at 142-407.]

19          Plaintiff also asserts that she was "pending" neck surgery, which confirmed her condition

20  was getting worse.  [JS at 11-12.]  Plaintiff testified, however, she would need surgery "eventually"

21  but she had "no way to take care of that."  [AR at 51.]  None of the medical records indicate that

22  surgery was scheduled.  [*See* generally AR at 142-407.]  Thus, the record was not ambiguous or

23  inadequate so as to trigger the ALJ's duty to develop the record.  Nevertheless, the ALJ kept the

24  record open for plaintiff to supplement it with additional information.  [AR at 62]; *see Tonapetyan*,

25  242 F.3d at 1150 (an ALJ can discharge duty to fully and fairly develop the record by "keeping the

26  record open after the hearing to allow supplementation of the record"); *see also* 42 U.S.C. §

27  423(d)(5)(B).  The ALJ specifically stated, "if you get additional records, by all means, get it to us,

28

1  and I will take a look at it." [AR at 62.]  No additional evidence was submitted to the ALJ or to the

2  Appeals Council for review.  [See AR at 1-3.]  Accordingly, remand on this basis is not warranted.

3

4  **C.    PLAINTIFF'S CREDIBILITY**

5        Plaintiff contends that the ALJ's "credibility analysis [as to plaintiff's pain and limitations

6  testimony] did not rest on substantial evidence in the record as a whole." [JS at 13.]  The Court

7  disagrees.

8        Whenever an ALJ discredits a claimant's testimony regarding subjective symptoms,

9  including degree of pain and functional limitations, the ALJ must make explicit credibility findings.

10  See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); see also Dodrill v. Shalala, 12 F.3d

11  915, 918 (9th Cir. 1993) (if the ALJ does not accept a claimant's testimony, he must make specific

12  findings rejecting it).  The ALJ can reject a claimant's allegations "only upon (1) finding evidence

13  of malingering, or (2) expressing clear and convincing reasons for doing so."  Benton v. Barnhart,

14  331 F.3d 1030, 1040 (9th Cir. 2003); see Lester, 81 F.3d at 834 (the ALJ must provide clear and

15  convincing reasons for discrediting a claimant's testimony as to severity of symptoms when there

16  is medical evidence of an underlying impairment).  The factors to be considered in weighing a

17  claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies

18  either in the claimant's testimony or between the claimant's testimony and his conduct; (3) the

19  claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and

20  third parties concerning the nature, severity, and effect of the symptoms of which the claimant

21  complains.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R.

22  §§ 404.1529(c), 416.929(c).  Absent evidence showing that a claimant is malingering, the ALJ

23  must clearly identify evidence in the record undermining the claimant's testimony to properly

24  discredit his alleged limitations.  See Dodrill, 12 F.3d at 918; see also Reddick v. Chater, 157 F.3d

25  715, 722 (9th Cir. 1998) ("General findings are insufficient; rather, the ALJ must identify what

26  testimony is not credible and what evidence undermines the claimant's complaints.") (citations

27

28

1   omitted).  If properly supported, the ALJ's credibility determination is entitled to "great deference."

2   See Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

3       As the ALJ did not find that plaintiff was malingering, the ALJ was required to justify his

4   credibility determination with clear and convincing reasons.  See Benton, 331 F.3d at 1040.  In the

5   decision, the ALJ found that plaintiff's "medically determinable impairments could reasonably be

6   expected to cause the alleged symptoms; however, [plaintiff's] statements concerning the

7   intensity, persistence and limiting effects of these symptoms are partially credible to the extent

8   they are inconsistent with the above residual functional capacity assessment [citation]."  [AR at

9   15.]  The ALJ discounted plaintiff's subjective symptoms and alleged limitations because he found

10  that plaintiff's medical records were inconsistent with her subjective complaints and her complaints

11  of "chronic, severe neck/back pain ha[d] not adversely affected her ability to perform most tasks

12  including [those] work related."  [AR at 15-17.]  The Court has considered the ALJ's reasons for

13  discounting plaintiff's subjective testimony, and concludes that the ALJ has provided a clear and

14  convincing reason supported by substantial evidence for finding plaintiff's symptoms and

15  limitations incredible.

16      Plaintiff testified that she experiences pain every day.  [AR at 25.]  She is not able to stoop,

17  stand and sit for very long periods of time, and needs to shift positions every few minutes.  [AR

18  at 15, 39.]  She further testified that she experiences vertigo "quite often" which causes her to be

19  dizzy.  [AR at 53.]  Plaintiff stated that the longest period of time she experienced vertigo was for

20  "two or three days."  [Id.]  Despite plaintiff's alleged limitations, however, plaintiff was able to

21  perform tasks pertinent to her relevant work setting, and was in fact working during the relevant

22  time period.  [See AR at 15, 22-23.]  Thus, the ALJ properly found plaintiff incredible because her

23  activities exceeded her alleged limitations.

24      Plaintiff alleged a disability onset date of May 15, 2005.  [AR at 64, 65, 120.]  The ALJ

25  noted, and the record confirms, that plaintiff "testified that she stopped working full time in May

26  2005 due to severe neck/back pain," but plaintiff "continued to perform home health aide tasks for

27  pay on behalf of her mother [from 2001] until July 2007."  [AR at 13-15; see also AR at 22-23.]

28

Plaintiff testified that her primary responsibilities as an in-home aide to her mother included driving her mother to various appointments and running errands such as going to the store to pick up stamps on a daily basis. [See AR at 22-23.] Further, in an August 2006 psychological report, plaintiff acknowledged that she "look[ed] after her [mother], cook[ed] her meals and [kept her] house." [AR at 209.] In that same report, the psychologist opined that "[t]his seemed to be inconsistent with [plaintiff's] inability to perform her job, particularly as it seemed that she was doing the same type of work with her mother that she does in her employment." [Id.] Thus, the record supports the ALJ's finding that plaintiff was able to perform work-related functions, and was in fact working during the relevant time period. [AR at 15, 22-23.] As plaintiff engaged in daily activities that involved skills that not only could be transferred to the workplace, but that were in fact relevant to plaintiff's past relevant work experience, these activities are sufficient for finding plaintiff's alleged limitations to be incredible. Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005); see also See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (when a plaintiff's daily activities "involve many of the same physical tasks as a particular type of job," those activities "may be sufficient to discredit an allegation of disabling" symptoms). Because substantial evidence in the record supports the ALJ's finding, rejecting plaintiff's credibility on this basis alone is sufficient to discredit plaintiff's testimony. See Tonapetyan, 242 F.3d at 1148 ("Even if we discount some of the ALJ's observations of [plaintiff's] inconsistent statements and behavior . . . we are still left with substantial evidence to support the ALJ's credibility determination"). Giving the ALJ's credibility determination great deference, remand is not warranted on this claim.

**D.   SIGNIFICANT AND PROBATIVE EVIDENCE**

Plaintiff asserts that the ALJ failed to consider significant and probative evidence, specifically an MRI performed in April 2007 indicating that plaintiff's condition was "worsening." [JS at 16; see also AR at 260-61.]

Although the ALJ "need not discuss *all* evidence presented to [him]," he "must explain why 'significant probative evidence has been rejected.'" Vincent v. Heckler, 739 F.2d 1393, 1394-95

1    (9th Cir. 1984) (quoting Cotter v. Harris, 642 F.2d 700, 706 (3rd Cir. 1981)) (emphasis in original).

2    Contrary to plaintiff's assertion, the record indicates that the ALJ did not reject the April 2007 MRI,

3    but in fact considered it in his disability determination.  [See AR at 16.]  Specifically, the ALJ found

4    that the "April 2007 MRI of the lumbar and cervical spines had not changed from the earlier [2005]

5    radiological reports denoting mild to moderate L5-S1 disc protrusion with no stenosis or foraminal

6    narrowing."  [Id.]  He also found that the "cervical spine examination also had not changed from

7    [earlier reports of] mild to moderate C5-6 disc herniation with mild to moderate bilateral foraminal

8    narrowing."  [Id.]  Based in part on this finding, the ALJ concluded that plaintiff had the RFC to

9    perform the full range of medium work.  [AR at 14.]  However, the ALJ does not cite to, nor can

10   the Court find, a medical opinion that supports the ALJ's interpretation of the MRIs as showing

11   that plaintiff's condition had "not changed" since the 2005 examinations.  [See id.]

12          The 2005 MRI of plaintiff's lumbar spine apparently revealed only "mild to moderate

13   degenerative disk disease at L5-S1, 2 mm disk bulge."[6]  [AR at 161.]  The 2007 MRI indicated that

14   plaintiff, at the same L5-S1 level, had "**moderate** disc desiccation," "**moderate** degenerative

15   endplate edema involving both the inferior endplate of L5 and superior endplate of S1," "**3 mm**

16   central broad-based disc protrusion slightly indenting the anterior thecal sac," and "mild left neural

17   foraminal narrowing."  [AR at 260 (emphasis added).]  The 2007 MRI further reported "mild

18   desiccation" at the L3-4 and L4-5 levels [id.]; there was no report of these levels or any other

19   levels in the 2005 lumbar spine MRI.  [See generally AR at 161.]

20          The 2005 cervical spine MRI revealed degenerative disk disease at the C5-6 level.  [AR at

21   161.]  The 2007 MRI at the C5-6 level revealed, among other things, a "posterior osteophyte

22   formation with a 2 mm retrolisthesis of C5 on C6 and a superimposed 5 mm central/left far lateral

23   protrusion abutting the anterior cord," and "neural foramina [that] is mild to moderately narrowed

24   bilaterally."  [AR at 262.]  The 2007 MRI of the cervical spine also reported on other levels,

25   including C6-C7, which revealed "a 4 x 7 mm central disc herniation . . . with impingement on the

26

27          [6]   The 2005 lumbar and cervical spine MRIs were not included in the record, but were

28   interpreted by Dr. Jennifer Chen in her February 1, 2006, evaluation of plaintiff.  [AR at 161.]

1     transiting nerve roots and central canal stenoisis." [AR at 262-63.] Thus, the 2007 MRIs were not

2     entirely consistent with the 2005 results, the ALJ's conclusion that the MRIs showed plaintiff's

3     condition had not changed is not supported by the evidence, and it was error for the ALJ to

4     interpret the evidence and substitute his opinion for that of a medical doctor. Gonzalez Perez v.

5     Sec'y of Health and Human Servs., 812 F.2d 747, 749 (1st Cir. 1987) ("The ALJ may not

6     substitute his own layman's opinion for the findings and opinion of a physician"); see also

7     Ferguson v. Schweiker, 765 F.2d 31, 37 (3rd Cir. 1985) (holding ALJ erred by "independently

8     reviewing and interpreting the laboratory reports" and thus "impermissibly substituted his own

9     judgment for that of a physician").

10          Nevertheless, this error was, at most, harmless. The April 2007 MRI was conducted during

11     a period when, according to plaintiff's testimony, she was continuing to work on a part-time basis.

12     This demonstrates her ability to work during the relevant time period. [AR at 22-23.]  Further,

13     because the ALJ pointed to other objective evidence in the record in reaching his determination

14     that plaintiff is not disabled (including an October 2006 Complete Orthopedic Evaluation in which

15     examining physician Dr. Philip Z. Wirganowicz observed that plaintiff was "in no acute distress"

16     and was over-reactive throughout the examination, her "deep tendon reflexes [were] within normal

17     limits and [there were] no nerve tension signs," and she showed "[n]o muscular atrophy or

18     asymmetry" [AR at 15-16, 242, 244, 246]), "the ALJ's error, if any indeed existed, was

19     inconsequential to the ultimate nondisability determination," and therefore harmless. See Stout

20     v. Social Sec. Admin. 454 F.3d 1050, 1055 (9th Cir. 2006); see also Burch, 400 F.3d at 679 (citing

21     Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1991) ("A decision of the ALJ will not be reversed

22     for errors that are harmless.")); Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006)

23     (an error is harmless if it is "clear from the record that an ALJ's error was 'inconsequential to the

24     ultimate nondisability determination.'").  Accordingly, remand is not warranted on this claim.

25     /

26     /

27     /

28

1  **VI.**

2  **CONCLUSION**

3      **IT IS HEREBY ORDERED** that: 1. plaintiff's request for reversal, or in the alternative,

4  remand, is **denied**; and  2. the decision of the Commissioner is **affirmed**.

5      **IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the

6  Judgment herein on all parties or their counsel.

7      **This Memorandum Opinion and Order is not intended for publication, nor is it**

8  **intended to be included in or submitted to any online service such as Westlaw or Lexis.**

9

10

11  DATED: September 21, 2010

                                                  _____

12                                                    PAUL L. ABRAMS
                   UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28